

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

1

2   **JESUS E. Soto-DIAZ,**
      Plaintiff,

3

4         **v.**                                    **CIV. No. 97-2123 (DRD)**

5   **WARNER-LAMBERT, INC.,**
      Defendant.

6

7

8                    ## OPINION AND ORDER

9        The above captioned complaint was brought by plaintiff Jesus Soto-Diaz ("Soto") against

10  defendant Warner-Lambert, Inc. ("Warner-Lambert") for employment discrimination.  Plaintiff

11  filed a complaint on July 18, 1997, seeking compensatory and punitive damages and reinstatement

12  to his previous position.  (Docket No. 1).  His first claim for relief  arises under the American with

13  Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., whereby plaintiff alleges that reasonable

14  accommodation was not provided and he was wrongfully discharged because of his disabled

15  condition.  (Docket No. 1).  His second claim for relief arises under Puerto Rico Law No. 44 of

16  July 2, 1985, as amended,  P.R. LAWS ANN. tit. 1 § 501 et seq. (Supp. 1999); under said local law

17  plaintiff alleges discriminatory practices based on defendant's failure to provide reasonable

18  accommodation.  The Court has pendent jurisdiction over Plaintiff's local claim under 28 U.S.C. §

19  1441(c).  (Docket No. 1).

20       Pending before the court is a motion for summary judgment filed by defendant Warner-

21  Lambert pursuant to Rule 56 of the FED. R. CIV. P.  and Local Rule 311.12 (Docket No. 47);

22  Plaintiff Soto's opposition thereto and cross motion for summary judgment,  (Docket No. 51),

23  and Defendant Warner-Lambert's opposition to Plaintiff's cross motion for summary judgment

24

25

26

AO 72
(Rev 8/82)

and reply to the opposition (Docket No. 60).

Through its motion for summary judgment, Warner-Lambert alleges that Soto's condition fails to constitute a disability within the meaning of the ADA, thus rendering Soto an unqualified individual under the Act.  Warner-Lambert argues that even though Plaintiff does suffer from scoliosis, Soto's scoliosis is admittedly mild and does not substantially limit his ability to perform any major life activity.  (Docket No. 47, ¶ 2).  Through a cross motion for summary judgment, plaintiff alleges that he was qualified to perform the essential duties of his position and that the extra requirements placed upon him by his superiors caused him back pain to a degree which limited his ability to engage in the major life activities of lifting and working, thus making him a qualified individual.  (Docket No. 51).  Soto further alleges that his medical records at the Warner-Lambert dispensary in Fajardo provide sufficient corroboration to constitute a record of such an impairment.  (Docket No. 51, ¶ 4).

## I. BACKGROUND

The relevant facts stated in the light most favorable to the non-movant are as follows. Plaintiff Soto is a resident of Fajardo, Puerto Rico and was during relevant times an employee of Warner-Lambert as defined by 42 U.S.C. § 12111(4).[1] Plaintiff began working for Warner-Lambert on October 5, 1989, as a Production Handler and on January 8, 1990, was transferred to the position of Packaging Machine Operator.  Warner-Lambert is a "covered entity," as defined

---

[1]

The ADA defines the term "employee" as: an individual employed by an employer.  With respect to employment in a foreign country, such terms includes an individual who is a citizen of the United States.  42 U.S.C. § 12111(4).

2

by 42 U.S.C. § 12111(2) and (4).[2]  (Docket No. 47, ¶ 1).  As a Packaging Machine Operator, Soto's duties included operating a packaging machine and filling the machine with bottles, caps and Dilantin capsules.  (Docket No. 47, ¶ 2).  Packing the machine with capsules required that at least twice a week employees lift around 50 containers.  The containers' weight is contested: Warner-Lambert alleges each container weighed 50-60 pounds (Docket No. 47, ¶ 2); Soto alleges that each container weighed up to 70 pounds (Docket No. 51).  Whether the lifting of containers was done individually or in pairs is also contested.[3]  (Docket Nos. 47 & 51).

In 1991, during a medical examination performed by Dr. Oreste Castellanos[4] on behalf of Warner-Lambert, Dr. Castellanos noticed a deviation in Soto's spinal cord called "scoliosis." (Docket No. 47).  Although there is no controversy that Dr. Castellanos recommended that Soto rest, exercise and change his position whenever his back bothered him, there is a question as to whether Dr. Castellanos advised Soto to talk to his supervisor and ask to be placed in a different working area.  (Docket No. 51, ¶ 3).  Although Warner-Lambert requires that a Medical Report, including work restrictions, be filled by the examining physician or nurse whenever an employee's fitness for work is affected by a physical condition, (Docket No. 47, ¶ 6), no such restrictions were included in the report filled by Dr. Castellanos.  (Docket No. 47, ¶ 7).  Plaintiff alleges that

---

[2] "Covered entity": The term "covered entity" means an employer, employment agency, labor organization, or joint labor-management committee. 42 U.S.C. § 12111(2)

[3] The Court finds that the weight of the containers and whether the lifting was done individually or in pairs is not a "material fact" affecting the determination of the final outcome.

[4] Dr. Oreste Castellanos and Dr. Irizarry worked at Warner Lambert's dispensary at all relevant times.

3

the work restrictions were not included in the report because, as he was told, such documents could affect his future development and opportunities at Warner-Lambert. (Docket No. 51, ¶ 4).

On April 12, 1995, plaintiff complained of back spasms to his supervisor Carlos Baez and was referred to the Warner-Lambert dispensary where he was examined by Dr. Irizarry. (Docket No. 47, ¶ 9). Plaintiff alleges that he not only complained of back spasms, but also of back pain caused by repetitious lifting of heavy weights. (Docket No. 51, ¶ 6). Plaintiff was diagnosed by Dr. Irizarry as suffering "mild dextroscoliosis." (Docket No. 51, ¶ 12). Warner-Lambert alleges that Dr. Irizarry found the condition to be asymptomatic (Docket No. 47, ¶ 13), while Soto states that the alleged back pain was a clear symptom of the condition (Docket No. 51, ¶ 6). Like Dr. Castellanos, Dr. Irizarry never filled a medical report on Soto's complaints while Soto worked at Warner-Lambert.

There is no controversy that Soto could perform all the essential functions of a Packaging Machine Operator. However, Soto felt limited in his capacity to lift heavy weights repeatedly. (Docket Nos. 47 & 51). Additionally, Soto's abilities with respect to sitting down, standing, walking, kneeling, bending, getting dressed or undressed, were and continue to be normal. (Docket No. 47, ¶ 29). Soto never requested a change or modification of his functions (Docket No. 47, ¶ 22), however Soto alleges that he did request to be relieved of his heavy lifting duties on many occasions (Docket No. 51).

For reasons that are contested, Soto was discharged from his employment effective June 30, 1995. Plaintiff alleges he was discharged on June 30, 1995, because of his refusal to lift and weigh an additional lot of containers on June 27, 1995, which would have been his third of the day. (Docket No. 51, ¶ 14). Defendant alleges that in addition to the insubordination on June 27,

4

1995, plaintiff had a record of "negative attitude" and too many absences to be a productive

employee. (Docket No. 47, Exh. 7). After Soto's termination by Warner-Lambert, Soto's back

pain condition improved (Docket No. 51, ¶ 15), to the point that Soto later worked at another

plant in a position which required repeated bending and lifting approximate weights of 15-20

pounds (Docket No. 47, ¶ 25).

Both plaintiff and defendant now move the Court to grant summary judgment in their

favor on the ADA claims.

## II. SUMMARY JUDGMENT STANDARD

The function of summary judgment is "to pierce the boilerplate of the pleadings and

examine the parties' proof to determine whether a trial is actually necessary." Vega-Rodriguez v.

Puerto Rico Tel. Co.., 110 F.3d 174, 178 (1st Cir. 1997). Accordingly, federal courts will grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." FED. R .CIV. P. 56(c).

See also Cortes-Irizarry v. Corporación Insular,111 F.3d 184, 187 (1st Cir. 1997) (summary

judgment will be denied where there is "a trial worthy issue as to some material facts.") A fact is

deemed "material" if the same "potentially affect[s] the suit's determination." Garside v. Osco

Drug Inc., 895 F.2d 46, 48 (1st Cir. 1990). "An issue concerning such a fact is 'genuine' if a

reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the

party resisting summary judgment, could resolve the dispute in that party's favor."

Cortes-Irizarry, 111 F.3d at 187. Nonetheless, "speculation and surmise, even when coupled with

effervescent optimism that something definite will materialize further down the line, are

5

AO 72
(Rev 8/82)

impuissant on the face of a properly documented summary judgment motion." <u>Ayala Gerena v.</u>

1    <u>Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 95 (1ˢᵗ Cir. 1996) (citations omitted).

2            The movant for summary judgment, of course, must not only show that there is "no

3    genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law."

4    <u>Vega-Rodriguez</u>, 110 F.3d at 178.  Further, the court is required to examine the record "drawing

5    all reasonable inferences helpful to the party resisting summary judgment." <u>Cortes-Irizarry</u>, 111

6    F.3d at 187.  There is "no room for credibility determinations, no room for the measured weighing

7    of conflicting evidence such as the trial process entails, no room for the judge to superimpose his

8    own ideas of probability and likelihood . . ." <u>Greenburg v. Puerto Rico Maritime Shipping Auth.</u>,

9    835 F.2d 932, 936 (1st Cir. 1987).

10           "We believe that summary judgment procedures should be used sparingly ... where the

11   issues of motive and intent play leading roles ... It is only when the witnesses are present and

12   subject to cross-examination that their credibility and the weight to be given their testimony can

13   be appraised.  Trial by affidavit is no substitute for trial by jury which so long has been the

14   hallmark of 'even handed justice.'" <u>Poller v. Columbia Broad. Sys.</u>, 368 U.S. 470, 473, 82 S.Ct.

15   486, 491 (1962); <u>cf</u> <u>Pullman-Standard v. Swint</u>, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-

16   1791 (1982) (discriminatory intent is a factual matter for the trier of fact); <u>see also</u> <u>William Coll.</u>

17   <u>v. P.B. Diagnostic Sys., Inc.</u>, 50 F.3d 1115, 1121 (1ˢᵗ Cir. 1995); <u>Oliver v. Digital Equip. Corp.</u>,

18   846 F.2d 103, 107 (1ˢᵗ Cir. 1988); <u>Lipsett v. University of P.R.</u>, 864 F.2d at 881, 895 (1ˢᵗ Cir.

19   1988).  "Under such circumstances, jury judgments about credibility are typically thought to be of

20   special importance." <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 928 (1st

21   Cir. 1983).  Recently, the First Circuit Court reiterated the caution on issuing summary judgment

wherein there are potential issues of motive and intent.  <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 433 (1st Cir. 2000) ("[D]eterminations of motive and intent, particularly in discrimination cases, are questions better suited for the jury.") (citing <u>Mulero-Rodriguez v. Ponte, Inc.</u>, 98 F.3d 670, 677 (1st Cir. 1996)).  However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 95 (1st Cir. 1996).  When adjudicating a motion for summary judgment the facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." <u>Vega-Rodriguez</u>, 110 F.3d at 178.

        FED. R. CIV. P. 56(e) requires parties to submit admissible evidence to oppose motions for summary judgment.  Furthermore, once the moving party has pointed to the absence of adequate evidence to support the non-moving party's case, the burden shifts to the non-movant to present facts that show a genuine issue for trial.  <u>Serrano-Cruz v. DFI Puerto Rico</u>, 109 F.3d 23, at 25 (1st Cir. 1997); <u>LeBlanc v. Great American Ins. Co.</u>, 6 F.3d 836, 841-42 (1st Cir.1993). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S.Ct. 2505, 2510 (1986)(citing FED.R.CIV.P. 56(e)). "[P]laintiff ... [must] offer[ ] ... 'significant probative evidence tending to support the complaint.' " Id. (quoting from <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593 (1968)).

7

## III. DISCUSSION

### A. The ADA Claim

The ADA prohibits an employee to discriminate against a qualified individual covered under the Act on the basis of his/her disability. 42 U.S.C. § 12112(a). To raise a claim under the Act for discrimination on the basis of disability, Plaintiff must first establish his prima facie case. Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir. 1998). Not all physical impairments rise to the level of a disability under the ADA, nor do all adverse employment decisions due to a disability rise to the level of an actionable claim. Rather, "[t]o establish an ADA claim, a plaintiff must establish: (1) that he or she suffers from a 'disability' within the meaning of the Act; (2) that he or she was able to perform the essential functions of the job, either with or without reasonable accommodation;[5] and (3) that the employer discharged him or her in whole or in part because of that disability." Feliciano v. Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998) (citing Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996)). See Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 18 (1st Cir. 1998).

In the instant case, only the first aspect of the three pronged analysis is being debated. Therefore, the Court will focus only on the question of whether the plaintiff was disabled under the ADA. Pursuant to 42 U.S.C. § 12102(2),

The term "disability" means, with respect to an individual-
(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such impairment; or
(C) being regarded as having such impairment

---

[4] Although the ADA also prohibits an employer from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," 42 U.S.C. § 12112(b)(5)(A), Soto concedes that reasonable accommodation was not requested. Accordingly, this aspect of the ADA is not relevant.

8

42 U.S.C. § 12102(2). In addition, whether a claimant is disabled under the ADA involves a case by case approach utilizing the three step inquiry set forth by the Supreme Court. See Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202 (1998); Albertsons, Inc. v. Kirkingburg, 527 U.S. 555, 556, 119 S.Ct. 2162, 2169 (1999). The three steps are the following: "[f]irst, does the claimant have a physical impairment? Second, what is the life activity the claimant asserts is limited and is it a major life activity? Third, does the impairment substantially limit the major life activity?" Hurley v. Modern Continental Construction Co., 54 F.Supp.2d 85, 92-93 (D. Mass. 1999); see also Bragdon v. Abbott, 524 U.S. 624, 631-642, 118 S.Ct. at 2202-2207 (1998).

"The first step in the inquiry under subsection (A) requires [the Court] to determine whether respondent's condition constituted a physical impairment." Bragdon, 524 U.S. at 631, 118 S.Ct. at 2202. The terms "Physical or mental impairment" are defined as:

> (h) Physical or mental impairment means:
> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 CFR § 1630.2(h) (1999). Whereas, "substantial limits" is defined as follows:

> (1) The term substantially limits means:
> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 CFR § 1630.2(j)(1) (1999). Additionally, the Supreme Court ruled in Sutton v. United Air

9

Lines, Inc., 527 U.S. 471, 472, 119 S.Ct. 2139, 2142 (1999), that

> [B]ecause the phrase 'substantially limits' appears in subsection (A) in the present indicative verb form, the language is properly read as requiring that a person be presently--not potentially or hypothetically--substantially limited in order to demonstrate a disability. A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if corrective measures were not taken.

Further, in Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 119 S.Ct. 2133 (1999), the

Supreme Court reasoned that when a plaintiff has not shown that his impairment prevents him

from participating in a broad range of jobs the mere fact of having an impairment is insufficient, as

a matter of law, to prove that petitioner is regarded as substantially limited in the major life

activity of working.

Finally, "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing

manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR §

1630.2(i) (1999).

The Court now proceeds to examine whether Soto is disabled under the ADA following

the three pronged analysis delineated in Bragdon, 524 U.S. at 631, 118 S.Ct. at 2202. First, the

Court considers whether Soto's scoliosis constituted a "physical impairment" under the ADA.

Second, the court identifies the life activities upon which Soto relies–lifting and working--and

determines whether they constitute "major life activities" under the ADA. Third, tying the two

statutory phrases together, the court asks whether Soto's impairment substantially limited one or

more of Soto's "major life activities."

Read most favorably to Soto, the evidence on the record satisfies the first two

requirements of this analysis. Soto's scoliosis problem was an impairment under the relevant

10

EEOC definitions, being a "physiological disorder or condition" affecting the "musculoskeletal"

body system.  See 29 C.F.R. §§ 1630.2(h)(1);  Furthermore, working and lifting have been

explicitly recognized as "major life activity" under EEOC regulations.  See Id. §§ 1630.2(i); see

also Colwell v. Suffolk County Police Dept., 158 F.3d 635, 642 (2d Cir. 1998), cert. denied, 526

U.S. 1018, 119 S.Ct. 1253 (1999) (activities listed in EEOC regulations are treated as major life

activities per se, rather than as major life activities only to the extent that they are shown to affect

a particular ADA plaintiff).  29 C.F.R. App. to pt. 1630 (commentary on §§1630.2(i), citing

Senate Report at 22; House Labor Report at 52; House Judiciary Report at 2; Robert L.

Burgodorf Jr., Disability Discrimination in Employment Law 134 (1995).

However, where Soto's claim encounters difficulty is at the third and final step of the

analysis: his scoliosis was not shown through probative evidence to have substantially interfered

with the performance of any of the identified major life activities.  The Court explains.

As advanced, the EEOC regulations define "substantially limits" as:

(i) Unable to perform a major life activity that the average person in the
general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under
which an individual can perform a particular major life activity as compared
to the condition, manner, or duration under which the average person in the
general population can perform that same major life activity.

29 C.F.R. §§ 1630.2(j)(1). In making the determination whether an impairment meets the

"substantially limits" test, the Court considers:  (1) the nature and severity of the impairment; (2)

the duration or expected duration of the impairment; (3) the permanent or long term impact, or

the expected permanent or long term impact of or resulting from the impairment.  See Id. §§

1630.2(j)(2); Santiago Clemente v. Executive Airlines, 213 F.3d 25, 30-31 (1st Cir. 2000).  With

11

respect to the major life activity of working, the term "substantially limited" is taken to mean "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 CFR § 1630.2(j)(3)(i) (1999); See Santiago, 213 F.3d 25. Furthermore, to determine whether the individual is substantially limited in the major life activity of working, the Court must consider:

> (A) The geographical area to which the individual has reasonable access;
> (B) the job from which the individual has been disqualified because of an impairment, and the number of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 CFR § 1630.2(j)(3)(ii) (1999); See Santiago, 213 F.3d at 32.

## 1. Major Life Activity of Lifting

As per the major life activity of lifting, plaintiff Soto has failed to provide enough evidence to prove that his ability to lift was significantly restricted by his physical condition of scoliosis. The Supreme Court recently emphasized that the determination of whether an individual has proffered enough evidence to survive summary judgment is to be done on a case by case basis. A plaintiff must prove "that the extent of the limitation in terms of his own experience ... is substantial." Albertson's, 527 U.S. at 566, 119 S.Ct. at 2169. In the case of lifting, courts have recognized that lifting is a major life activity. Notwithstanding, the relevant cases all point towards a stringent standard requiring the impairment to "significantly restrict" a major life

activity. "Inability to perform that discrete task [of lifting 44-56 pound containers continuously all day] does not render a person substantially limited in a major life activity." <u>Ray v. Glidden</u>, 85 F.3d 227, 229 (5th Cir. 1996). "While lifting is noted under the regulations as a major life activity, a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of ADA." <u>Snow v. Ridgeview Med. Ctr.</u>, 128 F.3d 1201, 1207 (8th Cir. 1997). See also <u>Gutridge v. Clure</u>, 153 F.3d 898, 901 (8th Cir. 1998). "[A]s a matter of law ... a 25 pound lifting limitation does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." <u>Williams v. Channel Master Satellite Sys., Inc.</u>, 101 F.3d 346, 349 (4th Cir. 1996). <u>See</u> <u>Aucutt v. Six Flags Over Mid-America</u>, 85 F.3d 1311, 1319 (8th Cir. 1996). These precedents, thus, overwhelmingly indicate that for a lifting limit to constitute a disability under ADA, the limit must impose a severe, permanent restriction that substantially limits the employee/plaintiff's ability to "to lift and reach" in general. <u>See</u> <u>Thompson v. Holy Family Hosp.</u>, 121 F.3d 537, 539-540 (9th Cir. 1997).

Even though the First Circuit Court of Appeals has yet to decide any cases on the issue at hand, the Fourth, Fifth, Eighth, and Ninth Circuit Courts of Appeals have held that individuals who were limited to lifting less than twenty-five pounds were not, as a matter of law, disabled. See <u>Thompson</u>, 121 F.3d at 539-540; <u>Williams</u>, 101 F.3d at 349; <u>Aucutt</u>, 85 F.3d at 1319; <u>Ray</u>, 85 F.3d at 229. In the cases cited, the courts concluded that lifting limitations did not impose a significant limitation when compared to the average person in the general population. Further, other courts of this district have held that lifting limitations must impose significant restrictions on the plaintiff's ability to engage in major life activities, in order for these limitations to be considered disabling under the ADA. See <u>Ortiz Molina v. Mai del Caribe, Inc.</u>, 83 F.Supp.2d 271,

13

277 (D.P.R. 2000) ("These precedents thus overwhelmingly indicate that for a lifting limit to constitute a disability under the ADA it must be a severe, permanent restriction that substantially limits the employee/plaintiff's ability to lift and reach in general.")

The evidence proffered indicates that Soto can lift objects as long as he avoids *repetitive* lifting of *heavy* objects. (Statement of Contested Facts, Docket No. 51, ¶ 9). Hence, Defendant claims this case is no different than Thompson, 121 F.3d at 539-540; Williams, 101 F.3d at 349; Aucutt, 85 F.3d at 1319; Ray, 85 F.3d at 229. Further, at no time, has any evidence been submitted specifying that Soto's scoliosis imposes a "substantial limit" on his ability to lift as compared to the "condition, manner or duration" under which the average person can perform the activity of lifting. Clearly, the plaintiff may not rest on conclusory allegations to oppose a motion for summary judgment, Ayala-Gerena, 95 F.3d at 95, and yet here Soto attempts to do just that. Soto ignores the main issue of the defendant's motion for summary judgment which alleges that Soto is not disabled within the meaning of the Act; and instead simply states: "Plaintiff Jesus Soto's scoliosis qualifies as an impairment within the meaning of ADA. His back pain affected his muscle-skeletal system and limited him in the function of lifting and moving objects and in working." (Memorandum, Docket No. 51, ¶ 2).

Moreover, as to the "nature and severity of the impairment" requirement, the Court finds that Soto's impairment is admittedly mild, and his pain is only triggered after repetitive lifting of heavy weights (70 pounds). In evaluating the "duration or expected duration of the impairment" requirement, the Court finds that clearly Soto's scoliosis will affect him in some way or another for the rest of his life. Notwithstanding, shortly after he stopped the repetitive lifting of heavy weights Soto's back pain improved and he was able to lift lighter weights, (Docket No. 51, ¶ 15).

14

Thus, Soto's condition is not one characterized by a permanent or long term impact. Indeed, when Dr. De la Cruz examined Soto, Soto was no longer experiencing any pain which substantially limited any major life activity, even though Dr. De la Cruz stated that Soto "may experience that pain and limitations in the future." (Statement of Uncontested Facts, Docket No. 51, ¶ 32). Therefore, for the reasons stated above the Court finds that Soto's condition does not meet the requirement that the employee be presently substantially impaired, Sutton, 527 U.S. 471, 119 S.Ct. 2139 (claimant must be presently substantially impaired). Soto has proffered no evidence showing that his scoliosis presently constitutes a substantial restriction on his ability to lift, work or perform any other major life activities. Without more, the Court must find that plaintiff has not satisfied the evidentiary burden to support his claim that his scoliosis constitutes a "substantial limit" on the "major life activity" of lifting.

## 2. Major Life Activity of Working

For the major life activity of working, Soto has failed to provide sufficient evidence to demonstrate that his claimed impairment substantially restricted his ability to perform either a class of jobs or a broad range of jobs as compared to the average person. 29 CFR § 1630.2(j)(3). (1999); See Santiago, 213 F.3d at 32-33. The EEOC regulations establish strict guidelines that must be followed in order to prove "substantial limitation" in the "major life activity" of working. 29 CFR §§ 1630.2(j)(3) (1999); See Santiago, 213 F.3d at 32, Quint v. Stanley Mfg. Co., 172 F.3d 1, 11 (1st Cir. 1999). When, through summary judgment, the defendant questions whether the plaintiff is a qualified disabled individual under the Act, the onus is on the plaintiff to provide enough evidence to support his complaint. Santiago, 213 F.3d at 33. Thus, Soto had to evince that his impairment restricted his ability to perform in a class of jobs or in a broad range of jobs.

15

Id. at 32. In order to prove that he was restricted he could have considered the geographical area to which he had reasonable access; the number of jobs utilizing similar training, knowledge, skills or abilities within that geographical area; and/or the number of jobs not utilizing similar training, knowledge, skills or abilities within that geographical area. 29 CFR §§ 1630.2(j)(3)(ii)(A-C) (1999); See Quint, 172 F.3d at 11-12. Nowhere in his opposition, however, does Soto attempt to provide the Court with evidence of a substantial limitation in the major life activity of working through the guidelines provided by the EEOC or through any other means. In fact, there is evidence in the record that Soto found a similar job in the same geographical area shortly after he was dismissed. (Memorandum, Docket No. 47, p. 7). Therefore, as with Soto's claim of a substantial limitation on the major life activity of lifting, the court finds that Soto's failure to provide evidence of a substantial limitation on the major life activity of working proves fatal to his claim. The Court has no option but to grant summary judgment for the defendant since the plaintiff has rested on conclusory allegations and has failed to fulfill his evidentiary burden. Ayala-Gerena, 95 F.3d at 95.

**3. Record of Impairment**

In opposing a motion for summary judgment, the plaintiff must put his "best foot forward" to ensure that his claim will not be dismissed. At the end of section two of plaintiff's memorandum in support of his opposition for summary judgment Soto states "Plaintiff does not have to establish a record of his impairment because he satisfied the requirements of the first definition of disability as enacted in the EEOC regulations. Of course, it is plaintiffs position that he also has a record of his impairment in his Warner-Lambert medical file." (Memorandum, Docket No. 51, ¶ 2). Plaintiff refers to the second meaning of the term disability under the ADA.

16

The term 'disability' means, with respect to an individual–
(A) a physical or mental impairment that substantially limits one or more of
the major life activities of such individual;
(B) <u>a record of such impairment;</u>[6] or
(C) being regarded as having such an impairment.[7]"

42 U.S.C. § 12102(2). (emphasis added)

First, the Court stresses the point that to be disabled under the Act the plaintiff needs more

than a simple record of an impairment. The plaintiff needs a record of a "substantially limiting"

disability.[8] Second, if plaintiff does have such a "record" of a substantially limiting disability,

which would prevent the Court from granting summary judgment in favor of the defendant, the

time to produce such evidence is now. "A party has a duty to put its best foot forward before the

[court]: to spell out its arguments squarely and distinctly. One should not be allowed to defeat

the system by seeding the record with mysterious references to unpled claims, hoping to set the

stage for an ambush should the ensuing ruling fail to suit. Given plaintiff's obfuscation, the district

court's finding that the theory was not adequately placed in issue before the [court] was eminently

supportable." <u>Paterson-Leitch Company, Inc., v. Massachusetts Municipal Wholesale Electric</u>

<u>Company</u>, 840 F.2d 985, 990 (1st Cir. 1988). "The court has no obligation to play nursemaid to

---

[5] Pursuant to section (k) of 29 C.F.R. § 1630.2 "has a record of such impairment means has a history of, or has been misclassified as having,   a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).

[6] Pursuant to 29 C.F.R. § 1630 having such an impairment means:
   (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
   (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
   (3) Has none of the impairments defined in paragraphs (h) (1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment."
29 CFR § 1630.2(h).

[8] <u>See</u> Footnote 5.

17

indifferent parties.  Moreover, the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her."  <u>Pinto v. Universidad de Puerto Rico</u>, 895 F.2d 18, 19 (1st Cir. 1990).  Plaintiff, however, has failed to come forward with any evidence that he was a disabled individual under the Act either through a record of a substantially limiting disability or through a record of a physical impairment that substantially limits a major life activity.  Indeed, the Court understands that if Soto has any record of any physical disability, the disability will be the same one which the Court has held not to affect a substantial life activity.  Accordingly, the Court finds that Soto is not a qualified individual under the ADA and grants summary judgment in favor of defendants Warner-Lambert Inc.

## IV. CONCLUSION

For the reasons stated above, the Court reaches the following determinations:

1-For a plaintiff to establish a claim under the ADA he must first establish that he is disabled under the Act.

2-Plaintiff's lack of evidence to oppose defendant's motion for summary judgment on the questions of both  major  life activities of lifting and working proves fatal to the plaintiffs claim.

3-Although there are several contested facts, said facts are not material since the Plaintiff failed to provide any evidence tending to establish the sine qua non requirement of having a disability under the Act.

Jesus E. Soto Diaz (Soto) has not set forth sufficient evidence of the existence of a disability under any of the criteria prescribed by the Statute and Regulations.  Thus, because

18

Warner-Lambert had no legal duty to Soto under the ADA, the Court need not consider any of

1   the other issues raised by the parties.  Wherefore, in view of the foregoing, Defendant's Motion

2   for Summary Judgment is **GRANTED** and Plaintiff's federal cause of action under the ADA is

3   **DISMISSED WITH PREJUDICE.**

4
       The dismissal of Plaintiff's federal claim leaves only Plaintiff's claim under Puerto Rico law.

5
Pursuant to 28 U.S.C. sec. 1367(c) and <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715,

6
725, 86 S.Ct. 1130, 1138 (1966), the Court declines to exercise supplemental jurisdiction over

7
8   Plaintiff's Commonwealth claims against Defendant.  <u>See</u> <u>Rodriguez v. Doral Mortage Corp.</u>, 57

9   F.3d 1168, 1177 (1st Cir. 1995).  "As a general principle, the unfavorable disposition of a

10  plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, will

11
trigger the dismissal without prejudice of any supplemental state-law claims." <u>Id.</u> (Citations

12
omitted).

13
       Accordingly, Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

14

15         All other pending motions are hereby rendered **MOOT.**

16  **IT IS SO ORDERED.**

17         In San Juan, Puerto Rico, this 29th day September, 2000.

18

19

20  **DANIEL R. DOMINGUEZ**
     **U.S. District Judge**
21  P.\FINALORD ERS\97-2123 WPD

22

23

24

25

26                              19

AO 72
(Rev 8/82)